**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
**LISA ROBBINS o/b/o Johan S. Robbins,**
                         **Plaintiff,**

        **- against -**                                                    **OPINION & ORDER**
                                                                   **04 CV 2568 (NG) (JMA)**

**COMMISSIONER OF SOCIAL SECURITY,**
                         **Defendant.**
    --------------------------------------------------------------------x
**GERSHON, United States District Judge:**

        Plaintiff Lisa Robbins, on behalf of her son, Johan S. Robbins ("claimant"), applied for

supplemental social security income benefits ("SSI") on September 18, 2001, alleging that

claimant was disabled from asthma, delayed speech and balance issues.  The  application was

denied initially, and plaintiff timely requested a hearing.  On June 30, 2003, plaintiff, claimant

and their non-attorney representative appeared at the scheduled hearing before Administrative

Law Judge Lucian A. Vecchio ("ALJ").   By decision dated October 20, 2003, the ALJ denied

plaintiff's application for SSI benefits based on a *de novo* review of the record.  The Appeals

Council denied plaintiff's request for review, and the ALJ's decision became the final decision

of the Commissioner on May 28, 2004. Pursuant to 42 U.S.C. § 405(g), plaintiff commenced this

action on June 17, 2004.

        On May 19, 2005 defendant, Jo Anne B. Barnhart, Commissioner of Social Security,

moved to vacate the ALJ's denial and remand plaintiff's claim for further administrative

proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), made applicable to SSI

claims by 42 U.S.C. § 1383 (c)(3).  Plaintiff also moved to remand, but only for the purpose of

calculating the award of SSI benefits.  For the reasons stated below, plaintiff's motion is granted

and defendant's motion is denied.

**FACTUAL BACKGROUND**

## 1. Personal History

Claimant was born on June 1, 1996 and is currently nine years old. He lives with his mother and an older brother, who has also attended special education classes and received speech and language therapy.

Claimant exhibited signs of having limited communication skills at the age of two and began seeing a speech therapist three times a week. He later attended a full-time pre-kindergarten program for two years, where he continued to receive regular speech therapy to address his speech impairments.

In September of 2001, claimant entered kindergarten. The New York City Board of Education determined that claimant was "speech impaired" and placed him in special educational classes. There, claimant continued to exhibit limited communication skills. Specifically, he had speech delays and difficulties explaining and expressing himself. For example, although claimant was able to recite numbers from one to ten, count three objects, and recite his age, he could not identify most colors, ask what words meant, define common words, read capital letters of the alphabet or understand a joke, and he did not know his birthday or telephone number. Additionally, claimant suffered from asthma, which, according to his mother, caused him to miss approximately four to five days of school per month.

Claimant entered first grade in September of 2002, where he was again placed in special educational classes, continued speech therapy, and began physical therapy to address his demonstrated issues with balance.

## 2.  Medical and Academic Evidence

The administrative record before the ALJ consisted of medical reports provided by claimant's regular pediatrician and evaluations that were performed on July 17, 2001 at the Warbasse Nursery School.  Claimant was referred to the Warbasse Nursery School to determine his needs for pre-school placement.  During that visit he was observed by social worker Debbie Greenberg, CSW; physical therapist  Honey P. Bermeo, P.T.; psycho-therapist Florence Rubenstein Ph.D.; speech and language pathologist Beth R. Myerson, M.S., CCC/SLP; and occupational therapist Kaila Chen, OTR. The following summarizes the findings of each evaluator:

### a.  Debbie Greenberg, CSW, Intake Worker/Social Worker

Ms. Greenberg determined that claimant, then-five years old, was experiencing global motor delays.  Although he was able to dress and undress himself independently and could feed himself with a cup, spoon and fork, claimant had "difficulty drawing shapes and coloring and demonstrated other fine motor delays." R. 117.[1]  Additionally, he spoke in three and four word phrases with some substitutions and was able to imitate words but not actions.  Ms. Greenberg also found that claimant did not understand directions unless they were repeated, and, when directions were novel in nature, he required a "combination of gestures, pointing and speaking, to understand." *Id.*  She recommended that claimant be placed in a special education classroom with speech and language, occupational and physical therapies to address his global delays.

---

[1]  "R. __," refers to the Administrative Record, filed on September 20, 2004.

### b. Honey P. Bermeo, Physical Therapist

Ms. Bermeo described claimant as an "adorable, stocky and well-developed youngster," who exhibited "adequate attention to task." R. 119. Claimant was able to "imitate movements" and he demonstrated "adequate skills in developing appropriate motor plans for most given tasks." *Id.* However, claimant was deficient in other areas, including running, balance and coordination. Ms. Bermeo observed that claimant had difficulties standing on one foot and with jumping and hopping. Claimant also could not skip or independently complete a forward roll. Ms. Bermeo also concluded that the results of claimant's Peabody Developmental Motor Scales II test — a standardized test assessing gross motor skills — indicated gross motor deficits. Specifically, she found "muscle tone and strength deficits, postural deviation and delays in reflex integration and maturation" which led to "11 to 18 month developmental lags in gross motor function." R. 121. She recommended that claimant receive physical therapy to correct his stationary, object manipulation and playground skills.

### c. Florence Rubenstein, Ph.D.

Dr. Rubenstein administered four tests to evaluate claimant: 1) the Stanford-Binet Intelligence Scale, Fourth Edition, 2) the Vineland Adaptive Behavior Scale, Interview Edition, 3) the Brigance Diagnostic, and 4) Behavioral Observation.

Based on the Behavioral Observation, Dr. Rubenstein characterized claimant as a "very social youngster, who was experiencing speech and language anomalies." R. 122. Specifically, while he had good motivation, claimant had difficulty "understanding and responding to novel directives." *Id.* Also, while claimant responded to clear directions, he became confused when responses changed within a subset. For example, claimant could match the dots on a pair of dice, but was confused when asked to count the dots. Dr. Rubenstein additionally noted that

claimant exhibited problems with word recall, labeling objects and syntax, and that he used immature sentence structure.

In classroom observation, Dr. Rubenstein concluded that claimant was generally interested in socializing and playing with his classmates and noted that he was able to "engage in teasing." R. 123. However, she remarked that claimant had some difficulty integrating himself into the group. Dr. Rubenstein also noted that claimant's teacher expressed concern regarding claimant's failure to "obtain concepts involving numbers, colors and shapes," despite attending the head start program for two years. *Id.*

Claimant's standardized test results indicated that he was within the "Slow Learner Range," with "graphomotor and speech and language anomolies." R. 124. Qualitatively, his verbal reasoning and communication skills fell approximately two years below age expectation, and his knowledge of vocabulary was the equivalent of a child at the age of two years and seven months. His receptive and expressive language skills and memory for verbal material were also below age expectations. Dr. Rubenstein found claimant's socialization skills to be adequate; however, she believed that he had "difficulty understanding what is expected of him in a busy classroom." R. 124.

**d. Beth R. Myerson, M.S. CCC/SLP Speech and Language Pathologist**

Based on his standardized test scores, which fell more than three standard deviations below the mean, Ms. Myerson found that claimant presented with severe delays in his development of receptive and expressive language skills. During informal testing, claimant's intelligibility in connected speech was fair to poor, and Ms. Myerson attributed his latent responses when answering questions to "difficulties with processing auditory verbal information as well as word retrieval." R. 130. She recommended that claimant receive speech and language

therapy five times per week to correct these limitations.

### e. Kaila Chen, Occupational Therapist

Ms. Chen found that claimant was "extremely cooperative" and demonstrated "good attention span, frustration tolerance, concentration ability and ability to follow multi-step, familiar directions." R.133. She acknowledged, however, that claimant had difficulty following unfamiliar directions, and exhibited moderate delays in his balance reactions. Although claimant could identify primary colors, he was unable to identify shapes, sizes, letters or numbers. Ms. Chen recommended occupational therapy to address claimant's noted deficits.

### g. Miriam Holgado, M.D.

Dr. Holgado was claimant's pediatrician throughout the evaluation period. She determined, that, although claimant suffered from mild asthma, he was generally in good health. R. 163. In December of 2000, Dr. Holgado referred claimant to Dr. Ari Goldsmith, a Pediatric Otolaryngologist, to conduct an evaluation of claimant's upper airway obstruction. Claimant visited two additional times, after which Dr. Goldsmith determined that claimant no longer suffered from upper airway obstruction, but that he had thin fluid in his left ear.

### 3. Additional Evidence

The administrative record contains two Participation in School Activities, Related Service Recommendations and Participation Assessments ("IEP") resulting from conferences held on September 14, 2001 and November 6, 2003. The record before the ALJ included only the September 14, 2001 assessment, which contained evaluations from claimant's general and special education teachers, a speech and language evaluator, and a school psychologist. The assessment was based on claimant's performance while attending the head start program from 2000 through 2001.

The speech and language therapist characterized claimant as a "friendly, cooperative" five year old, who presented with "severe delays in the development of receptive and expressive language skills." R. 92. The evaluator noted that claimant communicated in "4 to 5 word sentences that were lacking in complexity and contained morphological and syntactic errors," and was able to follow two-step directions by "pointing and using gestures." R. 92-93.

Claimant was also observed by other professionals, including an occupational therapist, who noted that claimant had "significant delays in fine motor skills, graphomotor skills, bilateral-integration skills, and grasp patterns," and a physical therapist, who highlighted claimant's difficulties in "stationary, locomotion, object manipulation, and playground skills. " R. 95, 97. The evaluations in the report were used to prepare an Individualized Education program, which recommended that claimant be placed in a special education class for the following school year.

The November 6, 2003 report, which was included in the record before the Appeals Council, though not before the ALJ, contained similar evaluations and analyzed claimant's development two years later. Claimant, then-seven years old, continued to present with difficulties in fine motor skills, particularly with hand manipulation. He also had below average writing skills, exhibited by the use of an "inefficient grasp" to write**,** letter reversals, inadequate spacing between lines, and a failure to use the line correctly. The report also indicates that claimant required help in tying his shoes. Also, although claimant was in good health and required no medication during the day, the evaluator noted that he began to "breathe heavy after five minutes of playing catch.**"** R. 171.

In terms of his social and emotional development, although claimant participated in

classroom discussions, he had difficulty expressing himself when frustrated. The evaluator noted that he had a short attention span and required "constant reinforcement in classroom activities." R. 173. Additionally, claimant ranged from being very helpful to very disruptive in class and did not respond well to corrective actions.

A speech and language evaluator concluded that claimant also presented with "moderate receptive and expressive language disorder." R. 174. The evaluator noted that claimant had difficulty following "complex auditory directions" and provided "poor responses to basic questions." *Id.* Claimant exhibited below age level grammatical skills and he had limited semantic knowledge. *Id.* Although claimant recognized most letters in the alphabet, he had "minimum knowledge of letter sound" and thus had not yet mastered the alphabet. R. 170, 175. Consequently, claimant's reading level was also below grade level.

Based on these evaluations, it was recommended that claimant remain in special education classes and continue to attend speech therapy to address his impairments.

**ALJ'S DECISION**

In determining that claimant was not disabled within the meaning of the statute, the ALJ went through the three-step analysis prescribed by 20 C.F.R. § 404.924. First, he found that claimant had never engaged in substantial gainful activity. After reviewing the medical evidence, the ALJ found that claimant had asthma, some speech and learning disorders, poor balance, and impairments that were "severe," but did not meet or medically equal in severity the criteria for an impairment listed at 20 C.F.R. Part 404 , Subpart P, Appendix I.

Finally, the ALJ evaluated whether claimant had an impairment or combination of

impairments that were "functionally equal" to the level of severity contemplated by the listings. Because the ALJ did not find that claimant had an impairment that was listed in the examples provided at 20 C.F.R. § 416.926(a)(n), he reviewed the record to determine whether claimant had "marked" or "extreme" limitations in the following six domains of functioning: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving and Manipulating Objects; 5) Caring for Self, and 6) Health and Physical Well-Being.[2]

Based on his review of the record, and claimant's and his mother's testimony during the administrative hearing, the ALJ found that claimant did not have either an "extreme" limitation in any single domain of functioning or a "marked" limitation of functioning in at least two domains, and, therefore, was not eligible for SSI benefits under §§1602 and 1614 (a)(3)(A) of the Social Security Act through October 20, 2003. Specifically, the ALJ made the following findings with

---

[2]A "marked" limitation exists in a domain where claimant's "impairment(s) interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R.§ 416.926a(e)(2)(i). Where, as here, claimant is under 18, a limitation is marked when claimant has a "valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [claimant's] day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R.§ 416.926a(e)(2)(iii). A claimant is eligible for SSI benefits if he or she has "marked" limitations in at least two domains.

An "extreme" limitation exists in a domain where claimant's "impairment(s) interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R.§ 416.926a(e)(3)(i). Where, as here, claimant is under 18, a limitation is extreme when claimant has a "valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and [claimant's] day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R.§ 416.926a(e)(3)(iii). A claimant is eligible for SSI benefits if he or she has an "extreme" limitation in at least one domain.

regard to each domain:

### 1. Acquiring and Using Information, 20 C.F.R., § 416.926a(g)

The ALJ found that claimant has a "marked" limitation of functioning in this domain, which measures how well the child acquires or learns information, and how well he uses such information. The ALJ based his characterization on claimant's limited verbal reasoning and communication skills and claimant's inability to use correct wording when speaking and responding to questions. The ALJ mentioned claimant's low Preschool Language Scale III ("PLS-III") scores and claimant's one to two-word answers when he was asked questions during the hearing, but failed to provide any detail as to how this information may have affected his final determination.

### 2. Attending and Completing Tasks, 20 C.F.R., § 416.926a(h)

The ALJ found that claimant has "no limitation of functioning" in this domain, which measures how well the child is able to focus and maintain attention, begin to carry through and finish activities, the pace at which he performs activities, and his ease in changing activities. The ALJ based his determination on claimant's testimony that "he liked playing games with his friends and would complete the games." R. 18. Additionally, the ALJ noted that the record contained no evidence indicating that claimant was "unable to complete any of the testing performed in July 2001." *Id.*

### 3. Interacting and Relating with Others, 20 C.F.R., § 416.926a(i)

The ALJ found that claimant has "no limitation of functioning" in this domain, which measures how well the child initiates and sustains emotional connections with others, develops

and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. The ALJ based his determination on claimant testifying that he had a best friend. The ALJ also emphasized the portion of Dr. Rubenstein's evaluation in which she acknowledged that claimant played relatively well with his peers and is "genuinely interested in socializing with others." R. 18.

### 4. Moving and Manipulating Objects, 20 C.F.R., § 416.926a(j)

The ALJ found that claimant has a "less than marked" limitation of functioning in this domain, which measures how well the child moves his body from one place to another and how he manipulates things (gross and fine motor skills). Although Ms. Bermeo, the physical therapist, noted that claimant was below his age level in gross motor skills, the ALJ concluded that the deficit was "only 11 to 18 months behind," and thus not significant. R. 19. Moreover, despite Ms. Bermeo's evaluation that claimant was deficient in running, balance and coordination, the ALJ reached the independent conclusion that claimant was able to "keep up with children his own age," because he "played Nintendo, which requires eye-hand coordination." *Id.*

### 5. Caring for Self, 20 C.F.R., § 416.926a(k)

The ALJ determined that claimant has "no limitation" of functioning in this domain, which measures how well the child maintains a healthy emotional and physical state including, getting his physical and emotional wants and needs met in appropriate ways, how well he copes with stress and changes in the environment, and whether he cares for his own health, possessions and living area. The ALJ based his determination on the evidence indicating that claimant could feed, dress and undress himself and that he was completely toilet trained by the age of 5. In

reaching his conclusion, the ALJ also noted the physical therapist's assessment that claimant had good play skills and "excellent" frustration tolerance, concentration and attention span.

### 6. Health and Physical Well-Being, 20 C.F.R., § 416.926a(l)

The ALJ found that claimant has a "less than marked" limitation of functioning in this area, which measures the cumulative effects of physical and mental impairments and their associated treatments or therapies on the child's functioning. The ALJ cited claimant's mild bronchial asthma, which causes claimant to miss approximately four to five days of school each month as the basis for his determination.

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the findings of the Commissioner, as to any fact, "if supported by substantial evidence, shall be conclusive." Where a court finds that substantial evidence exists to support the agency's determination, the decision will be upheld even where contrary evidence exists. *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (affirming agency determination where substantial evidence existed for both sides). This standard applies to findings of fact as well as to inferences and conclusions drawn from such facts. *D'Amato v. Apfel*, 2001 WL 776945 at *3 (S.D.N.Y. July 10, 2001).

A district court reviews *de novo* whether the correct legal standard is applied and whether or not the ALJ's decision was based on the application of that standard. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). Therefore, where an error has been made that might affect the disposition of the case, a court cannot fulfill its duty by simply deferring to the factual

findings of the ALJ.

Here, defendant claims that the record before the ALJ was insufficient, as it consisted only of "reports based upon a single day of testing conducted two months earlier, and an IEP prepared several days before the filing of the SSI claim." Mem. of Law in Supp. of Def. Mot. for Remand for Further Admin. Proceedings, at 14 (Jan. 28, 2005) ("Def. Mot."). Thus, defendant requests that the matter be remanded in order to further supplement the record to consider additional evidence. Plaintiff, in contrast, asserts that the record before the ALJ contained ample evidence establishing that claimant is disabled and, in any event, the record before the Appeals Council—which was supplemented with the November 6, 2003 IEP—further supports such a finding. Therefore, plaintiff argues, the matter should be remanded solely for the purpose of calculating and awarding benefits.

Based upon my review of the record, I conclude that a remand for an award of benefits is required. To begin with, the ALJ's finding that claimant was not disabled is not supported by substantial evidence, and his reasoning failed to adequately acknowledge and weigh the evidence that was contained in the record before him. *See Thompson v. Barnhart,* 2004 WL 896663 at *6 (E.D.N.Y. March 26, 2004) ("an ALJ's failure to acknowledge relevant evidence or explain its implicit rejection is plain error."). Additionally, the ALJ committed legal error by disregarding the import of claimant's low standardized test scores and failing to reconcile any conflicting diagnoses offered by the evaluators. *See Vasquez*, 2005 WL 2429488 at *5 (finding an ALJ's "conclusory" determination that the standard was not met a sufficient basis for remand); *see also* 20 C.F.R. § 416.926a(e)(4)(B) ("When we do not rely on test scores we will explain our reasons

for doing so in your case record or in our decision.").

The ALJ also erred by disregarding the opinions of the evaluators, who were in agreement, regarding claimant's speech and language delays. The ALJ concluded, against the weight of the professional evaluations, that claimant was not disabled because he was only 11 to 18 months behind in his language skills, and that claimant had no problems relating to his peers because he was genuinely interested in socializing with others. In reaching these conclusions, the ALJ erroneously substituted his own opinions for those of professionals who have observed and treated the claimant. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (noting that ALJ cannot arbitrarily substitute his own judgment for competent medical opinion).

As noted above, a claimant is eligible for SSI benefits once it is determined that he or she has either a "'marked' limitations in two [] domains . . . or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(3)(d). As will be seen, there are no serious gaps or uncertainties in the record and persuasive proof indicates that claimant is disabled. Therefore, reversal and remand solely for calculation of benefits rather than for redetermination is appropriate. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

### 1. Evidence of Extreme Impairment of Acquiring and Using Information

20 C.F.R. §416.926a(e)(3)(iii) defines an extreme limitation as existing where a child has a "valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability of functioning in that domain, and [the child's] day-to-day functioning in domain-related activities is consistent with that score." The ALJ did not

address this regulation other than to minimize the role of the test scores. On this appeal, defendant does not dispute that claimant's PLS-III score of 78 was three standard deviations below the mean for his age in the Acquiring and Using Information domain nor does she dispute Ms. Myerson's assessment that this resulted in "severe delays in the development of receptive and expressive skills." R. 130. Rather, defendant disputes the second half of the analysis — whether the record contains sufficient academic and medical evidence to assess claimant's day-to-day functioning from September 18, 2001 through October 20, 2003.

As noted above, the September 14, 2001 and November 6, 2003 evaluations provided by claimant's special education teachers, physical therapists, and speech therapists tracked claimant's development from pre-kindergarten through second grade. Also, the testimony of the mother and claimant at the hearing was apparently credited by the ALJ. Given all of the evidence supporting the conclusion that claimant's day-to-day functioning was consistent with the standardized test scores, the ALJ erred in finding his impairment only "marked."

### 2. Evidence of Marked Impairment in the Interacting with Others domain.

Even if claimant had only a "marked limitation" in the Acquiring and Using Information domain, claimant's "marked" impairment in that domain supports a finding that claimant also has a "marked" limitation in the Interacting and Relating with Others domain. In recognizing that "communication" comprises both speech and language, and that language is used both for learning and for interacting and relating to peers, the SSA regulations require that a child's problems with speech and language be considered in both the Acquiring and Using Information

15

and Interacting and Relating with Others domains. *Kittles v. Barnhart*, 245 F.Supp.2d 479, 489 (E.D.N.Y. 2003). Although a finding of a "marked" limitation in one domain does not automatically warrant a finding of a "marked" limitation in the other, here, the evidence supports a finding that claimant has, at the very least, "marked" limitations in both domains.

A child who is not suffering from an impairment in the Acquiring and Using Information domain should be able to read, write, do math, discuss history and science. The child also should have obtained the relevant "readiness skills," which include the ability to rhyme words, paint, color, copy shapes, follow directions and listen to and tell stories. 20 C.F.R. § 416.962a(g)(2)(iii). Additionally, a child without an impairment is able to use increasingly complex language (vocabulary and grammar) and is able to share information with others both in school and at home, by asking questions and expressing ideas, and by understanding and responding to the opinions of others. 20 C.F.R. § 416.962a(g)(2)(iv).

A child who is not suffering from an impairment in the Interacting and Relating with Others domain uses words instead of actions to express himself or herself, relates to any care givers with increasing independence, and participates in conversations using increasingly complex vocabulary and grammar. 20 C.F.R. § 416.962a(g)(2)(iii). Additionally, the child is able to speak clearly enough to be understood by both familiar and unfamiliar listeners. 20 C.F.R. § 416.962a(g)(2)(iii).

The evidence is compelling that claimant suffered from a "marked" limitation in the Interacting and Relating with Others domain. Claimant cannot understand a joke, and has

consistently had problems understanding verbal cues and directions. Moreover, claimant cannot speak in complex sentences and has difficulties expressing himself in both a school setting and at home with his family.

Moreover, the information presented in the November 6, 2003 IEP indicates that claimant continues to experience such speech and language difficulties, even after more than five years of regular speech therapy. Tellingly, claimant, at the age of seven, still had not mastered the sounds of the letters of the alphabet. Although claimant was characterized as a social child who genuinely wants to play with others, it is indisputable that these speech and language limitations continue to prevent his effective communication and interaction with others within his community. Nothing in the record suggests otherwise. Therefore, the record supports the finding that claimant suffered, at the very least, from "marked" limitations in both the Acquiring and Using Information and Interacting and Relating with Others domains.

## CONCLUSION

The record establishes that claimant is disabled by reason of an "extreme" limitation in the Acquiring and Using Information domain. Alternatively, the record overwhelmingly supports that claimant is disabled by reason of "marked" limitations in both the Acquiring and Using Information and the Interacting and Relating with Others domains. Because the record contains persuasive proof that claimant suffers from a disability, a remand for further administrative proceedings will serve no purpose. Accordingly, the plaintiff's motion is granted and the defendant's motion is denied. The Commissioner's final decision is reversed, and the case is remanded solely for the calculation of disability benefits.

**SO ORDERED.**

*/s/ Nina Gershon*
**NINA GERSHON**
**United States District Judge**

**Dated: Brooklyn, New York**
**January 13, 2006**